## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CEDRIC R. HUTCHINSON,

      Petitioner,

v.                               Case No. 8:17-cv-2893-T-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## **ORDER**

      Cedric R. Hutchinson filed a timely petition under 28 U.S.C. § 2254 challenging his state convictions and sentence based on his trial counsel's alleged failures. (Doc. 1). Having considered the Petition (*id.*), the supporting memorandum (Doc. 2), and supplement to the memorandum (Doc. 18); the Response (Doc. 7) and Appendix (Doc. 8, 9 & 10); and the reply (Doc. 13) and notices of supplemental authority (Docs. 15 & 16), the petition is denied. Furthermore, a certificate of appealability is not warranted.

## I.     **BACKGROUND**

### A.  **Procedural History**

      The State of Florida charged Hutchinson with aggravated battery on a law enforcement officer with a deadly weapon (Count One); battery (Count Two); and fleeing to elude (Count Three). (Doc. 10, Ex. 1, pp. 12–16). A jury convicted Hutchinson of the lesser-included offense of aggravated battery on Count One and

convicted him as charged on Counts Two and Three. (*Id.*, pp. 75–76). The trial court sentenced Hutchinson to seventeen years in prison on Count One, followed by five years of probation on Counts Two and Three. (*Id.*, pp. 87–101). Hutchinson qualified as a habitual felony offender and a prison releasee reoffender, the latter carrying a mandatory minimum fifteen-year term of imprisonment. (*Id.*, p. 91); Fla. Stat. §§ 775.082(9)(a)3.c., 775.084(4)(a). The state appellate court per curiam affirmed the convictions and sentences. (Doc. 10, Ex. 6).

Hutchinson filed a motion for postconviction relief and an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10, Exs. 7 & 8). The trial court obtained a response from the State. (Doc. 10, Ex. 9). After denying one claim related to the sentence as a prison releasee reoffender, the postconviction court conducted an evidentiary hearing. (Doc. 10, Exs. 10 & 11). The court then entered final judgment denying postconviction relief on all remaining claims. (Doc. 10, Ex. 12). The state appellate court per curiam affirmed the denial. (Doc. 10, Ex. 18).

Hutchinson then timely filed this petition in federal court under § 2254 alleging four individual grounds of relief based on ineffective assistance of counsel claims and one ground of relief based on cumulative error of counsel. (Doc. 1).

B. **Factual Background**[1]

On July 5, 2011, Hutchinson and his girlfriend, Toretta Crymes, started arguing during a car ride from Plant City, Florida, to Tampa, Florida. When they arrived at their destination, Crymes exited the car. Hutchinson told Crymes to get back in the car. When she refused, Hutchinson threw her on the ground, hit her "in the back of the head," and "grabbed [her] around [her] neck and choked [her.]" (Doc. 10, Ex. 1, Vol. II, p. 99).

Crymes called 911. A passerby, Laura Showers, also called 911 to report that Crymes was being beaten. Tampa Police Department Officer Brad Simmonds responded to the scene. As Crymes testified at trial, Hutchinson had already left the scene when police arrived. As Officer Simmonds recalled the events, Hutchinson and Crymes were standing in the middle of the street when he arrived. According to him, Hutchinson got into his car and drove in Officer Simmonds's direction. Officer Simmonds yelled at Hutchinson to stop, tried to flag Hutchinson down, and flashed his police car's spotlight towards Hutchinson. Ignoring all those instructions, Hutchinson drove past Officer Simmonds and turned south on 50th Street.[2]

Officer Simmonds followed Hutchinson's car and activated his lights and sirens, but Hutchinson did not stop. Officer Simmonds continued to follow Hutchinson on 50th Street, estimating that they were traveling at 50 to 55 miles per hour.

---

[1] The factual background is based on the trial transcript and the direct appeal briefs.
[2] Officer Gina Gutierrez, who arrived after Officer Simmonds, stayed with Crymes.

At the same time, Officers James Byrne and Brad Grange were in an unmarked car in a nearby Taco Bell parking lot. After hearing of Officer Simmonds's pursuit over the police radio, they observed Officer Simmonds's car, with its lights and sirens activated, driving behind Hutchinson's car on 50th Street. Officer Byrne pulled out onto 50th Street, passed Officer Simmonds and Hutchinson, and pulled in front of Hutchinson to conduct a "box-in" maneuver designed to force him to stop.

When Officer Byrne's car slowed down, Hutchinson's car also slowed down to approximately 30 miles per hour. Then Hutchinson's car sped up. Officer Simmonds, driving with his windows down, heard Hutchinson's car accelerate. Officer Grange, riding in the passenger seat of the unmarked car, looked in the sideview mirror and saw the headlights of Hutchinson's car raise up, indicating to Officer Grange that the car was accelerating. Officer Grange yelled to Officer Byrne that they were going to be rammed. They both braced themselves as Hutchinson's car hit theirs. The impact caused the rear of the undercover car to lift up[3] and caused Officers Byrne and Grange to be jostled in their seats. All three cars came to a stop. Officer Simmonds then took Hutchinson into custody at the scene of the collision.

No one was injured in the collision, and the damage to the cars was minor—the rear bumper of Officer Byrne's car was dented. In fact, Hutchinson obtained a letter

---

[3] Officer Byrne was not sure if his car's rear tires came off the ground. (Doc. 10, Ex. 1, Vol. II, p. 175). Officer Simmonds explained that he saw the car "lift up off the suspension," but not up off the ground. (*Id.*, p. 134).

4

from the Tampa Police Department stating that no repairs were made to Officer Byrne's car.

## II.   Standards of Review of An Application Under Section 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA may be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable," as "an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the

6

opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the

fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he shows "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner shows prejudice by proving that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.  <u>Ineffective Assistance of Counsel Standard</u>

Hutchinson brings claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   Analysis

### A. Ground One

Hutchinson argues that his trial counsel rendered ineffective assistance by telling him not to testify at trial based on the erroneous advice that the prosecution could ask him about the nature of his prior convictions.[4] (Doc. 1, p. 6). He concludes that this deficient performance caused him prejudice because his testimony "would have provided a credible alternative to the State's case." (Doc. 13, p. 8). According to Hutchinson, he would have refuted the aggravated battery charge and the fleeing to elude charge because he would have told the jury that he was unaware that an officer was driving the undercover car and that Officer Simmons was pursuing him. (Doc. 2, p. 10). The state court determined that Hutchinson failed to satisfy both the deficiency and prejudice prongs of *Strickland* on this claim. (Doc. 10, Ex. 12, p. 6). Hutchinson challenges that ruling as an unreasonable determination of the facts in the light of the evidence presented at the evidentiary hearing. (Doc. 2, p. 11); *see also* (Doc. 2, p. 8) (although not identifying § 2254(d)(2), arguing that he "carried his burden of establishing by a preponderance of competent evidence" that his counsel was deficient). The Court disagrees.

---

[4] Under Florida law, "[t]he prosecutor may ask the defendant if he has committed any felonies or crimes involving dishonesty or a false statement." *Livingston v. State*, 682 So. 2d 591, 592 (Fla. 2d DCA 1996) (citing § 90.610, Fla. Stat.). "If the defendant answers correctly, then the prosecutor may establish the number of convictions." *Id.* Unless the defendant answers those two questions untruthfully, "the prosecutor is not allowed to inquire as to the specifics of any of the prior convictions." *Id.* (citing *Britton v. State*, 604 So. 2d 1288, 1290 (Fla. 2d DCA 1992)).

In the evidentiary hearing conducted in state court, Hutchinson testified that he wanted to testify at trial, but that his counsel "told me it would not be wise because they can use it—it would not be a good thing because of my prior convictions." (Doc. 10, Ex. 11, p. 5). When directly asked—on two occasions—whether counsel told him that the prosecution could delve into the nature of the prior convictions, he answered: "No, ma'am." (*Id.* at 6, 7–8). Instead, he conceded that his counsel told him that "the state can use [my past record] and it won't look so good in front of the jury because I got a bad past." (*Id.*, p. 7).

Hutchinson argues that he would have testified that he did not know the car in front of him was a police car and that he did not intentionally hit the car, both of which would have negated elements of aggravated battery on a law enforcement officer. (Doc. 2, p. 6). Hutchinson also testified at the evidentiary hearing that he informed his counsel of his desire to tell the jury that he left the area where he had argued with Crymes before Officer Simmonds arrived. Per his retelling, his trial counsel told him it was unnecessary because he planned to impeach Officer Simmonds with Crymes's testimony. (Doc. 1, p. 5). Hutchinson argues that there is a reasonable probability of a different outcome at trial had he testified.

Hutchinson's trial counsel refuted this testimony at the evidentiary hearing: "I don't have a recollection of [Hutchinson] ever telling me that he wanted to testify."

(Doc. 10, Ex. 11, p. 28). Based on his memory, Hutchinson "was never going to be testifying." (*Id.*, p. 27, 37). As counsel described it, "[w]e were going to trial because [Hutchinson] didn't like the offer and we were going to try to win the case based on the law"—it "was that kind of trial." (*Id.*, p. 37). When asked what he would have conveyed to Hutchinson had he inquired about his right to testify and specifically what information the prosecution could seek in cross examine about his prior convictions, counsel responded that he would have told Hutchinson it was limited to "whether you've been convicted of a felony and, if so, how many times." (*Id.*, p. 26). That number was "somewhere between 14 and 24 prior felony convictions at the time of his trial." (*Id.*, p. 27).

The state court concluded that this claim of ineffective assistance of counsel "rests on a determination of credibility," finding that Hutchinson "never expressed a desire to testify at trial." (Doc. 10, Ex. 12, p. 5). The state court based this finding of fact on counsel's testimony, which it expressly found "more credible than Defendant's testimony" and on Hutchinson's own admission at the trial that he understood his right to testify and knowingly waived that right after having sufficient time to discuss it with counsel. (*Id.*). Further, the state court found that, had Hutchinson asked to testify, his counsel would have informed him that the prosecutor could ask only about the number of felony convictions. (*Id.*). As such, there was no deficient performance. Lastly, it noted that Hutchinson was convicted of the lesser included offense of aggravated battery, not

aggravated battery on a law enforcement officer, thereby mooting any prejudice even had he testified. (*Id.*, p. 6).

Hutchinson fails to show through clear and convincing evidence that the state court's findings of fact were unreasonable. *See* 28 U.S.C. § 2254(e)(1). The testimony of counsel that the state court credited (and Hutchinson's earlier colloquy with the court during trial that the postconviction court noted) supports the finding that Hutchinson did not want to testify. Counsel's testimony also supports the factual finding that he never misadvised Hutchinson about the scope of potential cross examination concerning his prior felony convictions. Hutchinson admits as much (Doc. 10, Ex. 11, p. 6 & 7-8) (answering "[n]o, ma'am" when asked if counsel told him the prosecution could ask about the nature of prior felonies). Hence, Hutchinson not only fails to produce clear and convincing evidence that he did not testify due to inaccurate legal advice; his own testimony confirms the state court's finding of fact on this claim.

Perhaps understanding his fatal concession, Hutchinson pivots to argue that the state court failed to address whether counsel's advice was deficient in that no reasonable counsel would have "discouraged [his client] from testifying." (Doc. 2, p. 8). The Court questions whether Hutchinson properly preserved this framing of the issue in state court as a distinct claim from the above one. But regardless, the state court did not unreasonably find that counsel never discouraged his client from testifying (again a credibility determination that Hutchinson fails to rebut with clear and convincing evidence) nor did it unreasonably apply *Strickland*. Indeed, it would be the most

13

remarkable of situations where a petitioner proceeding under § 2254 could establish an unreasonable application of *Strickland* on prejudice grounds for not testifying when the petitioner would have been be impeached on cross examination by, at least 14 and up to 24, prior felony convictions.

Finally, Hutchinson's petition briefly refers to counsel's alleged statement that he "would impeach the testimony [of] Officer Simmonds . . . with the testimony of Ms. Crymes" and thus advised Hutchinson that his testimony was not necessary. (Doc. 1, p. 5; Doc. 10, Ex. 11, p. 8, 13). As Hutchinson stated at the evidentiary hearing, he wanted to testify at trial that he left Crymes before police arrived, which he now argues would negate the fleeing to elude charge on the theory that he did not know Officer Simmonds was pursuing him. (Doc. 2, p. 10).

To the extent Hutchinson intends to raise a distinct claim for relief,[5] Respondent correctly contends that this version of the claim is unexhausted. Hutchinson did not raise this claim in his amended Rule 3.850 motion. (Doc. 10, Ex. 8). During the evidentiary hearing, Hutchinson did not request or obtain leave to amend his motion to include this claim. (Doc. 10, Ex. 11); *see* Fla. R. Crim. P. 3.850(e) (requiring a petitioner to obtain leave of court to amend a postconviction motion after the court has ordered a response from the State). As a consequence, even though Hutchinson mentioned this issue in the evidentiary hearing, an independent claim that counsel was

---

[5] *See Clisby v. Jones*, 960 F.2d 925, 935–38 (11th Cir. 1992) (explaining that a district court must resolve all claims for relief presented in a § 2254 petition).

14

ineffective in misadvising Hutchinson that he need not testify about leaving the scene was not properly presented to the postconviction court, which is why it understandably did not address it.

Nor may Hutchinson timely return to state court to present such a claim. *See* Fla. R. Crim. P. 3.850(b) (providing that a motion under Rule 3.580 must be filed within two years of the date the judgment and sentence become final). The claim is therefore procedurally defaulted. *See Smith*, 256 F.3d at 1138. As Hutchinson does not argue or demonstrate that an exception applies to overcome the default, *see id.*, the claim is barred from federal habeas review. Ground One warrants no relief.

**B. <u>Ground Two</u>**

Hutchinson argues that trial counsel rendered ineffective assistance by failing to interview Laura Showers and by failing to call her as a witness. (Doc. 1 at 7). Showers called 911 to report the battery on Crymes, and Hutchinson asserts that Showers would have testified that he left before Officer Simmonds arrived. According to Hutchinson, Showers's testimony would have been contrary to Officer Simmonds's testimony that he observed Hutchinson at the scene and directed Hutchinson to stop, thereby creating a reasonable probability that the verdict would have been different. (Doc. 2 at 14).

At the evidentiary hearing, Hutchinson testified consistently with the claim raised in his federal habeas petition. (Doc. 10, Ex. 11, pp. 14-15). But he never produced an affidavit or testimony from Showers. Trial counsel did not testify about this claim because the court sustained the State's objection on the basis that Hutchinson had not

called Showers "to establish the allegations that he made in his 3.850 motion[.]" (*Id.* at 39-40). Accordingly, the state court denied Hutchinson's claim because he failed to produce evidence of Showers's prospective testimony. (Doc. 10, Ex. 12 at 7 (citing *Ferrell v. State*, 29 So. 3d 959, 969-70 (Fla. 2010), that held no prejudice was established when petitioner did not introduce any evidence of what counsel would have elicited from witnesses)).

Hutchinson has not demonstrated that the state court's conclusion involved an unreasonable application of *Strickland*. (Doc. 2 at 15). Because he never presented evidence of Showers's purported testimony, Hutchinson's claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Specifically, Hutchinson cannot show that the state court's denial of his claim involved an unreasonable application of *Strickland* because he has tendered *no evidence* of prejudice, much less sufficient evidence to render the state court's determination that he suffered no prejudice unreasonable. For that reason, the Court need not address whether the state court's determination that Hutchinson failed to satisfy the deficiency prong of *Strickland* was reasonable. *See* (Doc. 10, Ex. 12 at 7).

### C. **Ground Three**

Hutchinson argues that trial counsel rendered ineffective assistance by not "conduct[ing] an independent investigation to perfect an adequate defense." (Doc. 1 at 8). Hutchinson contends that counsel should have consulted an expert on "vehicle safety equipment installed" in the undercover car or "at least refer[red] to a manufacturer['s] manual[.]" (*Id.*; Doc. 2 at 22). According to him, this information, combined with evidence about the vehicles' weights and speeds and the failure of the airbags to deploy, disproves Officers Byrne's and Grange's testimonies that they needed to brace themselves and were jostled in their seats due to the impact. (Doc. 1 at 8; Doc. 2 at 22-23). Hutchinson asserts that counsel could have relied on "any number of hypothetical experts – specialists on vehicle safety, vehicle safety devices; collision impact; airbags deployment; speed; and brakes." (Doc. 2, p. 23).

The state court conducted an evidentiary hearing on this claim. Hutchinson testified consistently with the argument he raises in his federal habeas petition. (Doc. 10, Ex. 11, pp. 16-17). His trial counsel testified that he believed the evidence available at trial, including photographs of the car and the letter from the Tampa Police Department stating no repairs were necessary to the undercover vehicle, proved that the impact was not severe. (*Id.*, pp. 28-29, 38-39).

The state court denied Hutchinson's claim after the evidentiary hearing, finding that Hutchinson "failed to present any evidence or testimony other than his own that he argues his counsel could have introduced at trial to bolster his defense." (Doc. 10,

17

Ex. 12, pp. 9-10). As a result, the state court concluded he did not satisfy the deficiency or prejudice prong of *Strickland*. (*Id.*).

That determination was not contrary to, nor an unreasonable application of, *Strickland*. As to the first prong, *Stickland* (and hundreds of subsequent cases evaluating ineffective assistance of counsel claims) affirms that defense counsel's strategic determinations are presumed within their professional judgment. *See, e.g., Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). Here, the charge of aggravated battery arising out of a vehicle collision requires the prosecution to prove that the occupants of the "rammed vehicle were at least jostled or moved about within their vehicle" or "brace[d] themselves from the impact of an impending substantial collision." *V.A. v. State*, 819 So. 2d 847, 849 (Fla. 3d DCA 2002). Although Hutchinson faults his counsel for not conducting a more thorough investigation to rebut that the collision was not substantial, counsel's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91; *see Chandler*, 218 F.3d at 1318. Trial counsel introduced the letter from the Tampa Police Department indicating it conducted no repairs to the vehicle and photographs of the vehicle. Reasonable professional judgment suggests that no further investigation was warranted given the relevant legal standard for aggravated battery, and thus the state court's determination of no deficient performance was not unreasonable.

18

As to prejudice, Hutchison acknowledges that the experts he wanted trial counsel to call are "hypothetical." (Doc. 2, p. 23). He does not identify anyone who could have testified at trial or what evidence trial counsel should have introduced that would have given rise to a reasonable probability that the jury would not have convicted him on this count. Hutchinson's speculative claim does not warrant relief; *see Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559; *see also Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007)[6] (stating that a petitioner's "conclusory and speculative" claim about the effect of an expert witness's proposed testimony "does not amount to a showing of prejudice."); thus, the state court determination that he suffered no prejudice was not an unreasonable application of *Strickland*.

D. **Ground Four**

Hutchinson argues that trial counsel was ineffective for not researching his prior criminal history and objecting to his designation as a prison releasee reoffender ("PRR") and the resulting mandatory 15-year term. The state court denied this claim on the merits without an evidentiary hearing. (Doc. 10, Ex. 10, pp. 8-10).

Respondent first contends that this claim is unexhausted because Hutchinson did not properly raise it on collateral appeal. *See Boerckel*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

issues by invoking one complete round of the State's established appellate review process."); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)[7] ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."). To obtain appellate review, Hutchinson was required to brief the denial of this claim on appeal. *See* Fla. R. App. P. 9.141(b)(3)(C) (stating that briefing is required when at least one claim in a postconviction motion is resolved after an evidentiary hearing).

In his appellate brief, Hutchinson asserted in a three-sentence paragraph that the postconviction court erred in not addressing ground four in its final order denying relief after the evidentiary hearing. (Doc. 10, Ex. 16, p. 16). Significantly, he did not assert that the postconviction court erred in denying his claim on the merits, simply that it failed to provide an explanation in that latter order. (*Id.*). Hutchinson's contention on appeal did not fairly present the claim on its merits to the state appellate court and was therefore waived. *See Heath v. State*, 3 So. 3d 1017, 1029 n.8 (Fla. 2009) (concluding under a similar state rule requiring appellate briefing that petitioner "waived" his claim because his brief includes "no argument whatsoever and instead consists of a one-sentence heading in his brief"); *Marshall v. State*, 854 So. 2d 1235, 1252 (Fla. 2003) (stating that issues raised without argument in an appellate brief are "insufficiently

---

[7] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

presented for review"); *Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

By failing to brief on appeal the denial on the merits of this ineffective assistance claim, Hutchinson is precluded from raising it in his federal habeas petition. Nor can he return to state court to exhaust the claim in a second, untimely appeal. *See* Fla. R. Crim. P. 3.850(k) (providing that an appeal may be taken within 30 days of the rendition of a final order disposing of a Rule 3.850 motion). Therefore, this claim is procedurally defaulted for failure to exhaust in state court. *See Smith*, 256 F.3d at 1138. Hutchinson does not argue or show that an exception applies to excuse the default. *See id.* Accordingly, Ground Four warrants no relief under § 2254.[8]

## E. **Ground Five**

Hutchinson asserts that he is entitled to relief based on the cumulative effect of counsel's alleged errors. Because the state court rejected Hutchinson's other ineffective

---

[8] Hutchinson contends that trial counsel was ineffective in not investigating his prior record because he "doesn't qualify for p.r.r.HFO." (Doc. 1, p. 11). But Hutchinson offers no evidence that he did not qualify as a habitual felony offender (HFO). The Court does not interpret Hutchinson's mere reference to his HFO sentence as an attempt to raise an independent ineffective assistance of counsel claim on the basis that counsel should have contested his designation as an HFO. Regardless, the claim is unexhausted because Hutchinson did not present it in his Rule 3.850 motion or on collateral appeal. (Doc. 10, Ex. 8, pp. 18–20; Doc. 10, Ex. 16, p. 16). Hutchinson also fails to show that an exception applies to overcome the resulting procedural default. Thus, any claim that counsel was ineffective in not objecting to Hutchinson's HFO sentence is barred from federal habeas review.

assistance claims, it also denied his cumulative error claim. (Doc. 10, Ex. 12, p. 10). Hutchinson fails to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate"); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Hutchinson is not entitled to relief on Ground Five.

## V.    Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* To obtain a COA, a petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003); 28 U.S.C. § 2253(c)(2). Hutchinson has not made that showing. And because Hutchinson is not entitled to a COA, he is also not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Hutchinson's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Hutchinson and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 30, 2021.

Kathryn Kimball Mizelle
United States District Judge